NEW YORK & CUBA MAIL S. S. CO. v. ROYAL EXCHANGE ASSUR.

(Circuit Court of Appeals, Second Circuit. April 30, 1907.)

No. 186.

1. INSURANCE—MARINE POLICY—CONSTRUCTION—FREIGHT.

A marine policy, insuring freight on board, or not on board, valued at £2,062, or actual freight, if more, "full interest admitted, the policy being deemed sufficient proof of interest," should be construed to cover the freight at risk at the valuation specified, though the freight actually at risk was much less in value.

2. SAME—ACTUAL FREIGHT—PERCENTAGE.

Where a marine policy insured freight on board, or not on board, valued at a specified sum, or actual freight, if more, full interest admitted, and of the actual freight insured lost the whole, except a small salvage, there having been no abandonment, the percentage of actual freight lost should have been applied to the value in the policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1250.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 145 Fed. 713.

Harrington Putnam and Wing, Putnam & Burlingham, for appellant.

Frederick M. Brown and Butler, Notman & Mynderse, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal by the libelant from a decree in an action brought to enforce a policy of marine insurance, and the appeal presents the question of the amount of the recovery to which the libelant is entitled under the policy. The libelant was the

owner of the steamship Vigilancia, a steamship employed in carrying general cargo and passengers between New York, Cuba, and Mexican ports; and October 15, 1900, effected insurance with the respondent by the policy in suit against loss of the steamship's freight by perils of the seas for the period of 12 months. The subject of insurance was recited in the policy as follows: "Being on freight on board, or not on board, valued at £2,062, or actual freight, if more." A printed slip was annexed to the policy reading "full interest admitted, the policy being deemed sufficient proof of interest," with permission to the insured to detach it should the policy have to be produced in a court of law. During the life of this policy, and while on a voyage from Vera Cruz to New York, via Progreso and Havana, carrying general and other cargo on freight, the Vigilancia stranded on Colorado Reef, to the westward of Havana, on January 14, 1901. A part of the cargo was destroyed by stranding, and other portions were sacrificed by jettison. The steamship remained aground for nearly five months, being floated on June 2, 1901. By these perils she was prevented from earning her pending freight. The salvors brought her to New York, where she was sold; but her damages were so great as to make her a total loss. She was not repaired until May 20, 1902.

When the Vigilancia left Vera Cruz bound for New York, her freight was partly collectible at New York, and had been partly prepaid. The total prepaid freight was $3,467.41, made up of $1,173 for carrying cattle and $2,094.41 for general merchandise. As to both classes of freight, it was provided by the shipping agreements that the prepaid freight should not be refunded or returned. The other freight moneys collectible at New York, amounted to $3,421.02. Of this amount only $948.49 was ever collected, and that was collected at an expense which left a net return of only $38.02. Cargo had been engaged at Havana by the libelant for transportation by its line from Havana to New York, and which the libelant intended to ship by the Vigilancia; and, if this cargo had been shipped by the Vigilancia, the freight that would have been earned thereby would have been $3,000. Being unable to send this cargo by the Vigilancia, the libelant sent it by one of the other vessels of its line, and received the freight therefor.

The court below decreed for the libelant for the sum of $4,907.04, allowing a recovery only for the proportion which the lost freight bore to the policy valuation, and not including in the lost freight the freight on the cargo engaged at Havana.

The policy in suit belongs to a class which are now frequently made whereby freight is insured by a valued time policy, and which the parties intend to be in force during the whole period, irrespective of the ship's actual freight engagements. They are made to cover losses the amount of which cannot be forecast with approximate accuracy, and in order to protect the shipowner to the extent of his probable or possible loss by the interruption of the engagements of his vessel at any time during the period agreed upon. It is quite legitimate for the parties to make a contract for an insurance which they estimate to be the fair average value of the freight at risk at all times during the life of the policy; and, having made it, they are held to it, whether it proves to have been larger or smaller than the value

which actually happened to be at risk at the time of the loss. An insurance on expected freight, which may or may not be that of a full loading of the vessel, attaches whenever some cargo has been shipped and some freight is at risk; and the valuation attaches upon that freight, and fixes finally the estimated value of the freight at risk in the event of a total loss. The whole sum of the valuation is to be treated as the value of the freight at risk, notwithstanding the freight actually at risk proves to have been much less in value. "The difference in effect between a valued and an open policy is that under an open policy in case of loss the assured must prove the actual value of the subject of insurance; in a valued policy he need never do so, the valuation in the policy being conclusive between the parties." Arnould, Insurance, § 339.

In all valued policies, the valuation refers to the value in the event of the total loss of the subject insured, and its effect is, if the loss is total, to make the underwriter liable for the sum valued, if the insurance is equal to that sum; and, if the loss is not total, to make the underwriter liable in the proportion borne by the partial loss to the total loss. It is sometimes said of policies insuring freight that the valuation may be opened when it appears that but an inconsiderable amount of freight was actually at risk. What is meant by this is well pointed out by Gorrel Barnes, J., in The Main, L. R. (Prob. 1894) 324. Referring to Forbes v. Aspinall, 13 East, 323, where the subject was considered, he said:

That decision was "only an authority for a well-known proposition, viz.: That where both parties contemplated the freight insured to be on a full and complete cargo, and when in fact part only of the cargo is shipped, the freight upon the part cargo is only at risk, so that there must be what is called an opening of the valuation. In strictness, it is not an opening of the valuation, but is merely a reduction in proportion to the cargo shipped; the valuation still being held binding as a valuation on that portion which is shipped."

Where by mistake or design the amount of freight actually at risk is shown to have been much less than was contemplated by the parties to the policy, different considerations arise which need not be adverted to in view of the facts in the present case.

It was competent for the parties to agree that the valuation should stand for the value of the freight upon all the cargo on board the steamer at the happening of the loss, whether prepaid or not; or for the value of all the freight at the insurer's risk at the happening of the loss. The important question in the case is whether the one or the other of these valuations is applicable; in other words: What was the subject of insurance? And that question depends upon the intention of the parties as evidenced by the language of the policy. In voyage policies it is often possible to ascertain the intention of the parties from the extrinsic facts connected with the contract of insurance; as where the charter party is produced, and its terms in respect to freight are known to the underwriter when the policy is issued, and are supposed to be within the contemplation of the parties. As is pointed out by Mr. Justice Blackburn, in Allison v. Bristol Marine Insurance Co., 1 App. Cas. 209, 231:

"The presumption is, when freight is insured, that the charter party was disclosed to the underwriter."

In Williams v. North China Insurance Co., L. R. I. C. P. Div. 757, in considering the question what was insured under the words "estimated freight," in the policy, Jessel, M. R., said:

"Was it meant that the total freight, including advances, should be insured, or only so much of the freight as remained unpaid, or due, or to become due, to the shipowner? It is really a question of fact. The words of the policy may mean either. They may cover the portion of the freight paid in advance or not. To ascertain whether they do, we must look at the evidence."

Pollock, B., said:

"I think we may look at all the circumstances to see what was the subject-matter of the insurance, and I think they show that the subject-matter was the gross freight."

In time policies like the present there are usually few extrinsic facts of value to throw any light upon the meaning of the language in the policy in respect to the subject of the insurance. In the present case there are none. The policy insures "freight on board, or not on board." These words may mean the gross freight, or they may mean the freight at risk. The appellee insists, in substance, that they are intended to describe the freight on the whole cargo of the vessel, whether prepaid or not, at the time of the happening of the loss, and consequently that the valuation must be taken as applying accordingly. If this is true, there was no loss as regards the prepaid freight, and the amount is to be disallowed in estimating the amount of the partial loss. The appellant insists that these words are not intended to include prepaid freight, but describe all the freight at risk at the happening of the loss, including such as might accrue for cargo engaged, but not actually loaded.

In considering this question two considerations are pertinent, and these are both referred to in Allison v. Bristol Marine Ins. Co., supra, decided by the House of Lords. Lord Hetherley used this language:

"It is to be held in all cases that that in respect to which the insurance is made is that which is capable of being a subject-matter of insurance, viz., that which is at risk; and that, in regarding the contract of insurance, we must not assume, and we cannot in any way consistently with the law assume, that the insured is endeavoring to effect a policy upon that which is at no risk whatever. Next, when we come to look at the contract itself, it being a contract of freight, we have to remember that for a very long time it has been settled in our maritime law that prepaid freight cannot be recovered. I think, when we consider these two points, we shall be led very easily and safely to the solution of the difficulty which appears to have arisen in the case before us."

In Oriental S. S. Co. v. Tylor (1893) 22 Q. B. 515, Lord Esher said:

"From the moment when it becomes payable, advance freight cannot be insured by the shipowner. The freight, according to the contract, is then due to him by virtue of the contract at that time and at that moment. That does not depend upon whether the ship arrives or not. It is payable at that moment. It is money payable on contract, and on contract not depending upon any vicissitudes of his voyage at all."

We think these considerations are controlling in the present case, and that the terms "freight on board, or not on board" are not in-

tended to include prepaid freight. We cannot for a moment suppose that the parties intended to insure property in which the libelant would have no interest. We think they intended as the valued subject of insurance the freight at the libelant's risk, and not the gross freight, in which the libelant might have only a fractional interest. The words "on board, or not on board," have no material bearing upon the point. They are intended to cover such freight as may accrue upon the cargo actually or constructively in the custody of the vessel, although the cargo has not actually been laden upon the vessel. Tonge v. Watts, 2 Strange, 1251; Forbes v. Aspinall, supra; Adams v. Pennsylvania Ins. Co., 1 Rawle (Pa.) 97; De Longuemere v. Phœnix Ins. Co., 10 Johns. (N. Y.) 127; Same v. New York Ins. Co., Id. 201; Minturn v. Warren Ins. Co., 84 Mass. 86.

In reaching this conclusion we have not overlooked the language of some of the clauses of the policy which have been adverted to by counsel. The policy is obviously a blank form adapted for insurance of a vessel and of her cargo, and many of the clauses are applicable to either the vessel or the cargo, and are of no assistance in ascertaining the intention of the parties in respect to the insurance of freight. The parties agreed upon an insurance, which to the extent of the valuation should be a continuing indemnity during the life of the policy, regardless of the accidental conditions of the particular voyage, and meant that, if less freight than the valued sum happened to be at risk at the time of the loss, the valuation should nevertheless stand, and the loss be estimated accordingly, subject, of course, to the underwriter's right to any salvage which might be realized. When such an agreement is made, not as a wager, but in good faith, the underwriter having based his premium upon such an understanding, there is no reason why it should not be enforced, notwithstanding it turns out that the actual loss of the insurer is considerably less than the sum agreed upon.

The policy does not insure the earning capacity of the vessel during the term of the policy; but the subject of insurance is the freight which may exist and be at the risk of the libelant at the happening of the loss. If the Havana cargo had been engaged specifically for the Vigilancia, we do not doubt that the loss of freight on that cargo would constitute a part of the loss. Where the owner of a vessel has entered into a definite contract with the owner of goods that they shall be transported by his vessel, and the goods are at the port of shipment and ready to be put on board the vessel upon her arrival upon a particular voyage, the former has an insurable interest in the freight of the goods, and under a policy like this the freight would be at risk. Adam v. Warren Ins. Co., 22 Pick. (Mass.) 163; Robinson v. Manufacturers' Ins. Co., 1 Metc. (Mass.) 143; Adams v. Pennsylvania Ins. Co., 1 Rawle (Pa.) 97. Upon the facts in this case, however, the libelant, although it had an insurable interest in these freights, had not, so far as appears, by any overt act appropriated any part of the cargoes engaged to any particular vessel for transportation; nor does it appear that any cargo was actually at Havana awaiting transportation when the loss occurred. All this, however, makes but a trivial difference in the amount of the recovery which should be awarded.

Giving due effect to the policy, the freight at risk was actually $3,421.02, but was of the agreed value of $10,034.72. Of the actual freight the libelant lost the whole, except the salvage of $38.02.

As there does not appear to have been an abandonment the percentage of actual freight lost should be applied to the value in the policy, which will make a recovery of $9,923.19. A decree should have been rendered for this sum with interest. This amount is so largely in excess of the actual loss that we have industriously tried to reach a different interpretation of the policy, but have been unable to do so, and the appellee must be held to the consequences of the contract which it saw fit to make.

The decree is reversed with costs, and with instructions to the court below to enter a decree conformably with this opinion.