ATLANTIC FRUIT COMPANY, Appellant, *v.* HAMILTON FIRE INSURANCE COMPANY OF THE CITY OF NEW YORK, Respondent.

ATLANTIC FRUIT COMPANY, Appellant, *v.* PACIFIC FIRE INSURANCE COMPANY, Respondent.

ATLANTIC FRUIT COMPANY, Appellant, *v.* STUYVESANT INSURANCE COMPANY, Respondent.

(Submitted April 30, 1929; decided May 28, 1929.)

*Robert M. McCormick* and *Ira L. Anderson* for appellant. The plaintiff complied with all the terms of the policies. (*Killeen* v. *General Accident, Fire & Life Assurance Corp.*, 131 Misc. Rep. 691; 224 App. Div. 719; *Church* v. *Lafayette Fire Ins. Co.*, 66 N. Y. 222; *Cornell* v. *Travelers' Insurance Co.*, 120 App. Div. 459; 192 N. Y. 587; *Graham* v. *Home Insurance Co.*, 204 App. Div. 103; *Coffaro* v. *Queens Ins. Co.*, 217 App. Div. 197; *Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307; *Michael*

v. *Prussian National Ins. Co.*, 171 N. Y. 25; *Atlantic Basin Iron Works* v. *American Insurance Co.*, 222 App. Div. 608; *Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24; *Marcus* v. *United States Casualty Co.*, 249 N. Y. 21; *Globe & Rutgers Fire Ins. Co.* v. *Winter Garden Co.*, 9 Fed. Rep. [2d] 227.) Defendants waived the provisions of the policies as to making reports of the property at risk and other insurance. (*Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 410; *Walker* v. *Phœnix Ins. Co.*, 156 N. Y. 628; *Armstrong* v. *Agricultural Ins. Co.*, 130 N. Y. 560; *Gibson Electric Co.* v. *Liverpool, London & Globe Ins. Co.*, 159 N. Y. 418: *Posnick-Nonas Co.* v. *U. S. Fidelity & Guaranty Co.*, 222 App. Div. 36; *Home Insurance Co.* v. *Hightower*, 22 Fed. Rep. [2d] 882.)

*Nicholas F. Lenssen* and *Martin A. Schenck* for respondents. The sugar bags burned at Punta Gorda were not covered by the policy because they were not identified and located as at risk on records and in reports as required by the policy. (*American Surety Co.* v. *Patriotic Assurance Co.*, 242 N. Y. 54; 243 N. Y. 35; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240; *Bahr* v. *National Fire Ins. Co.*, 80 Hun, 309.) The plaintiff breached the essential warranties of the policy in regard to keeping daily records of values and locations and in regard to making monthly reports of the property at risk. Such breaches of warranty preclude recovery. (*Pastene & Co.* v. *Irving National Bank*, 249 N. Y. 272; *Licht* v. *New York Indemnity Co.*, 250 N. Y. 211; *Phillips-Jones Co.* v. *Fidelity & Deposit Co.*, 200 App. Div. 629; 235 N. Y. 524; *Buckner* v. *Title Guarantee & Insurance Co.*, 144 App. Div. 326; 207 N. Y. 672; *Pearlman* v. *Metropolitan Surety Co.*, 127 App. Div. 539; *Harris* v. *General Accident F. & L. Assurance Corp.*, 187 N. Y. Supp. 291; *Rosenberg* v. *People's Surety Co.*, 140 App. Div. 436; *Hunt* v. *Fidelity & Casualty Co.*, 99 Fed. Rep. 242; *Royal Insurance Co.* v. *Kline Bros.*, 198 Fed. Rep. 468; *Lozano* v. *Palatine Ins. Co.*, 78 Fed. Rep. 278; *Home Ins. Co.* v. *Williams*, 237 Fed. Rep. 171.)

CARDOZO, Ch. J.   The actions are on policies of fire insurance, issued in each case by a different insurer, but covering the same property and similar in form.

In each case the policy is described as an " open policy floater."   The subject of the insurance is to be a fluctuating " stock of merchandise," as well as " materials and supplies, store furniture, fixtures and appurtenances," while contained in buildings and adjoining yards in the island of Cuba.   The limit of liability for the contents of any one building and yard is to be $25,000.   Specific insurance, if any, is first to be deducted.

The premium due to the insurer is subject to variation with variations in the coverage.   A deposit premium of $250 paid at the beginning is to be adjusted thereafter according to the value of the property at risk from day to day.   " The insured shall keep a daily record of the total values and locations of the property at risk," and of the " specific or general insurance at the close of business every day," and " shall forward such reports monthly to W. Ward Smith, No. 1 Liberty Street, New York City."   Upon the termination of the policy " the amounts at risk shall be averaged according to such reports and records," and the premium due " shall be figured on the average amount at risk so ascertained at the annual rate of one per cent."   Provision is made, however, that " any error or omission in rendering the monthly report of values shall not operate to the disadvantage of the assured hereunder."   If the premium due at the termination of the policy exceeds the deposit premium of $250, the assured is to pay the excess; if less, the insurer is to return the difference.

The plaintiff is the owner of warehouses and mills in various provinces of Cuba.   On March 18, 1922, a fire in a warehouse at Punta Gorda destroyed over 79,000 empty sugar bags of the value approximately of $28,000. The plaintiff sues to recover the amount of this loss. The defense is a breach of the covenant whereby records

were to be kept and reports transmitted as to the property at risk.

The sugar bags destroyed arrived in Cuba about the end of December, 1921. They were not included in any of the monthly reports. Besides that omission there were many others, both in the reports and in the records. At first, the records were kept so as to show the daily averages, and the form of the reports was similar. Then, in July, 1921, the plaintiff came to the conclusion that this method was too burdensome. From that time on, without notice to the defendants, it made its reports upon a different basis. Instead of computing the daily average, it fixed the value on hand at the end of the month, added the purchases, deducted the sales, and reported the remainder as the average. By concession, this method of calculation is inaccurate and inconsistent with the contract. There is testimony that records are in existence in Cuba from which a computation of the averages could be made, though only with great labor. No such records were exhibited upon the trial or upon a preliminary examination after full notice to produce them. Besides the failure to compute the averages truly, there were other defects as serious. Whole classes of material and merchandise were deliberately left out of the reports of values and locations. Thus, the plaintiff held in its warehouse large quantities of molasses, of petroleum and of cocoanuts. None of these was ever mentioned in any of the monthly statements. Sugar bags were at times mentioned, and at other times excluded. Indeed, the plaintiff's secretary admits that his practice for the most part was to include only " commissary stocks," by which he meant the articles that the plaintiff held for sale as distinguished from material or other articles which it was using in the operations of its mills. Such articles equally with the commissary stocks were within the coverage of the policies, and as to all there should have been a record in the books and a report to

the defendants. An insurer issuing such a policy has
an interest in knowing the value and location of the
property at risk to enable it to calculate the premium
due from the insured, and to some extent for other
purposes, as, for example, reinsurance ( *Union Ins. Soc.
of Canton* v. *Wills & Co.*, [1916] 1 A. C. 281, 288). An
intentional omission, if not itself a fraud, is at least such
a departure from the contract as to supply an oppor-
tunity for fraud. Property so omitted will seldom be
known to the insurer, and hence will seldom figure in
the calculation of the premium. The insured, if there is
no fire, saves the cost of the insurance, and in the event
of a loss, rectifies the omission, and declares that what
was lost was at the risk of the insurer. The effect of
errors and omissions must be adjudged in the light of
these and kindred possibilities. On the one side, the
contention is that the only consequence of a failure to
comply with the covenant in respect of records and
reports is to give the insurer a claim for such additional
premium as would be due if the records and reports
were accurate. On the other, the contention is that
flagrant disregard of the obligation of the covenant will
vitiate the policy. The determination of this appeal
involves a choice between the one view and the other.

We think a willful or persistent failure to make accurate
records and reports of the values and locations of the
property at risk is the breach of a promissory warranty
defeating the insurance, though a forfeiture will not result
from errors or omissions that are inadvertent and occa-
sional. The effect of the covenant must be determined
in the light of the provision that " any error or omission
in rendering the monthly report of values shall not
operate to the disadvantage of the assured hereunder."
We are to view this as a commentary or gloss upon the
meaning of the covenant, restraining its operation as a
warranty in the conditions thus excepted, but leaving it
untouched in others. We do not hold with the defendants

that errors or omissions, in order to be condoned, must have relation to the value of the property and not to the location. In our reading of the contract, the "monthly report of values" is merely a compendious reference to the covenant as a whole, the covenant whereby records are to be made and reports transmitted. It would be an over-strict construction of the policy that would vitiate the insurance if a stenographer through inadvertence had confused one mill with another, with the result that the values as reported would be right, but the locations wrong. On the other hand, we do not read the proviso in respect of errors or omissions as excusing a willful and persistent failure to make reports or records in accordance with the covenant. What is excepted from the penalty of forfeiture is error or omission that is inadvertent or occasional. Thus read, the covenant and the proviso or exception are declaratory, taken together, of the existing rule of law. Already without the aid of an express exception, the courts had worked out a rule as to the effect of oversight or inattention in the preparation of reports where the coverage was open. The policies confirm what had been theretofore adjudged.

A question not dissimilar came before this court in *Arnold* v. *Pacific Mutual Insurance Company* (78 N. Y. 7), where the subject of the action was an open policy of marine insurance. The insurance was to cover goods consigned to the plaintiffs upon vessels "from Santos, in Brazil, 'to New York, Baltimore or Boston direct, or *via* Hampton Roads for orders.'" There was a provision that "risks applicable hereto" were "to be reported to this company for indorsement on the policy as soon as known to the assured." A vessel that was lost had been reported as sailing on a direct voyage from Santos to New York. By oversight the report failed to state that the voyage was "*via* Hampton Roads for orders." The court held that the error, being wholly inadvertent, did not vitiate the policy. "If the assured willfully or

fraudulently refused to report a risk, they could not claim that it was yet covered by the policy." But "if by accident or mistake, or some unavoidable necessity," the risk was not reported before loss, the declaration would be effectual if made thereafter. There are decisions in the English courts that lay down a like rule as to the effect of inadvertent error (*Stephens* v. *Ins. Co.*, L. R. 8 C. P. 18, 23; Arnould on Marine Ins., vol. 1, §§ 187, 188). Indeed, for them the subject is now covered by the provisions of a declaratory statute (Marine Ins. Law of 1906). Section 29, which has to do with floating policies, is to the effect that declarations of shipment shall be made to the insurer. These declarations "must, in the case of goods, comprise all consignments within the terms of the policy, and the value of the goods or other property must be honestly stated, but an omission or erroneous declaration may be rectified even after loss or arrival, provided the omission or declaration was made in good faith" (See Arnould on Marine Ins., vol. 1, § 186). On the other hand, the rule has been laid down that a failure to send any report at all, as distinguished from a mere error or omission in the contents of a report, is the breach of a promissory warranty, entailing, like the breach of warranties generally, the penalty of forfeiture (*Union Ins. Soc. of Canton* v. *Wills & Co.* [1916], 1 A. C. 281). To such a situation the statute with its rule of condonation has been thought to be inapplicable. Lord PARMOOR, speaking for the Judicial Committee of the Privy Council, defines the principle of division. "It is not," he says, "a case of omission or error in a declaration" but "a case in which no declaration has been made within the terms of the contract." The application of the statute in such conditions would be "to deprive the insurers of the benefits of an express warranty" and to abrogate the principle that they "are not liable unless the warranty has been exactly complied with." We do not need to consider whether there would be a like ruling

in this court if the failure to make a report were found to be the result of excusable mistake. Dicta in the *Arnold Case* (*supra,* at p. 13) give color of support for a less rigorous conclusion. We cannot doubt, however, that forfeiture must follow where the failure to report has been persistent and deliberate.

Such, we think, was in this instance the departure from the covenant to be charged to this insured. By its own showing, it calculated averages in a manner inconsistent with the contract, and this because compliance with the contract had been found to be troublesome. The breach is not excused by saying that it was the act of subordinates in Cuba. If the plaintiff left to subordinates the supervision of its records and the preparation of data for its reports, it must abide by what they did (*Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219, 230). Again, by its own showing, it excluded from its reports property of great value, on which a premium was due, and this because it preferred, at least in advance of any loss, to confine its reports for the most part to " commissary stocks." Part of the property thus omitted was the very property destroyed. A breach of covenant so willful, so substantial and persistent, puts an end to the insurance. It is like the failure to keep books of account or to preserve them in a fireproof safe in cases where a duty of that order is laid upon an insured for the protection of an insurer (*Licht* v. *N. Y. Ind. Co.,* 250 N. Y. 211; *Royal Ins. Co.* v. *Klein,* 198 Fed. Rep. 468; *Wright* v. *Union Ins. Co.,* 13 Fed. Rep. [2d] 613). The policy is forfeited if the warranty is breached.

The defendants make the additional point that the reports were defective in failing to enumerate the specific and general insurance as required by the contract. The amount of such insurance was known, however, to Mr. Smith, who was designated in the policies as the man to whom the reports were to be forwarded, and in his own reports to the defendants he apprised them of the

facts, supplying them with a list of policies general and specific. The failure to state the insurance in the reports authenticated by the plaintiff was apparent on the face of the reports themselves, which were received without objection. There was thus a course of dealing, which was substituted by tacit consent for literal performance. As to that requirement of the warranty, there has been a waiver of the forfeiture.

In each action the judgment should be affirmed with costs.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments affirmed.