## SCHENLEY DISTILLERS CORPORATION v. UNITED STATES FIRE INS. CO.

### No. 386.

Circuit Court of Appeals, Second Circuit.
June 14, 1937.

Root, Clark, Buckner & Ballantine, of New York City (John M. Harlan, Herman T. Stichman, and Richard E. Manning, all of New York City, of counsel), for appellant.

Chadbourne, Wallace, Parke & Whiteside, of New York City (George W. Whiteside, J. Arthur Leve, and Charles Pickett, all of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the defendant from a judgment entered upon a directed verdict in an action to recover under a policy of fire insurance for loss on certain liquors. The property insured belonged to the plaintiff and its subsidiaries and was stored in a number of warehouses in various places; the loss occurred on April 28, 1934, in the warehouses of James E. Pepper Co. Inc. at Lexington, Kentucky. The policy was one of twenty-four on the same risk, the defendant's share being for five per cent; it ran from October 1, 1933, to October 1, 1934, though it was executed on January 17, 1934. The stock at each warehouse varied from time to time, as it was sold and replenished, and the policy was for a provisional sum of $950,000 —5% of $19,000,000, which was not fixed as a maximum. There was merely a maximum for each of seventeen specified "locations," with a concluding general limit of $1,000,000 for all other "locations." The maximum in the case of the Pepper Company—and in a number of other companies—was $2,000,000 on "any one building," but without limit as to the number of buildings at Lexington, Kentucky; in effect there was therefore no maximum. In order to make the premium follow the changing

values, the policy contained the following clause: "Premium Adjustment Clause. The premium named in this policy is provisional only. The actual premium consideration for liability assumed hereunder shall be arrived at by the following method: A. It is a condition of this policy that the assured shall report to this company not later than —— days after the last day of each month the exact location of all property covered hereunder, the total value of such property in each location, and any other insurance in force at each of such locations on the last day of each month." It was "a condition of this policy that if at the time of any loss the insured has failed to file with this company reports as above required, the liability of this company shall be limited to the location and amounts included in the last report of value filed prior to the loss." The first defence—a partial one—is that the insured had violated this condition and became subject to this limit. The facts regarding this are as follows. The person who had conducted the preliminary negotiations for the plaintiff testified that he had told the defendant's agent that he would not accept any date in the reporting clause, because the plaintiff's business was expanding so fast that the reports could not keep pace with it. The defendant's agent answered that he would "go along with what the other companies were doing," and was told that with one exception they had agreed to leave the date blank. The policy was then signed, and while the defendant's agent denied this talk, he admitted that he had noticed the blank at the time of execution. The judge found—upon a motion for verdict by both sides—that the failure to fill in the blank was deliberate, and indeed so much cannot be disputed.

The plaintiff was extremely dilatory in making reports; that for the month of October was filed on December 29th, nearly a month late; that for November, on January 11, 1934, eleven days late; that for December, on February 21st, twenty-one days late; and that for January, 1934, on May 1, 1934, two months late and after the fire. Meanwhile the stocks in the warehouses at Lexington had grown from $500,000 in October to about $700,000 in January and February; in March they were more than $2,200,000, and in April, about $2,600,000. The defendant argues that,

if it is liable for anything at all, the limit is the values of the December report.

The second defence—a total one—arises from another clause in the policy. The coverage was upon "goods * * * the property of the assured, or held in trust, or on consignment, or for which the assured may be liable in the event of loss or damage," and the policy provided that it should be "void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." From October 1, 1933, forward, the Pepper Company held in its warehouses for storage about $250,000 of liquors, as bailee for others, only $86,000 of which was insured, and that by other underwriters. The plaintiff included none of these goods in its reports, and claimed nothing for their loss, not being liable to the bailors. The defendant's theory is that the policy covered them; that corresponding premiums should have been paid upon them; and that the insured had therefore concealed a fact material to the risk, and been guilty of a fraud; either one of which avoided the policy.

Taking up first the partial defence, the policy, unless limited, covered all liquors, which were "the property of the assured * * * contained in * * * warehouses * * * within the limits of the United States excluding Texas"; that language was general, and the limitation of $19,000,000 being only provisional, the only express limitation was $2,000,000 for any one warehouse which was not exceeded. The insurer depended for its protection upon the monthly reports; if the insured fell into default, the coverage was limited to the value in the last report. But if he did not, the insurer accepted any increase during the interval; there was no limit, so long as the insured was not in default. The insurer insists first that the omission to fill the blank could not in any event give the insured more than thirty days; the reports were to be "monthly." So they were, but they were not necessarily to be filed within the next month; that depended upon how long a time the insurer was ready to assume the risk of unknown increases in stocks; it might be willing to do so for more than a month; indeed, it

gave ample evidence that it was. Next, the insurer argues that if the time was not so limited, at least it ought to be limited to a reasonable time. Perhaps that is true; clearly the insured had to file reports at some time. Even so, the insurer has not proved that the delay was unreasonable, considering the work to be done; we do not know anything about the conditions. Moreover, if we did, and if the insured, so judged, had been dilatory, the insurer was bound to protest; for there was really an implied contract that he should, at least so long as the insured was acting in good faith. The law does not regard a man's actual intent, but only what a reasonable person, placed like him, would have intended. Here we are to assume that the insured, though actually delaying unreasonably, did not suppose that it was. The trouble to the insurer was very slight of protesting that the delay was imperilling its own interests; the consequence to the insured of not doing so was very grave, when the stocks were increasing. Most insurers would give such a warning; most insured would expect one; ordinarily both would understand that unless one was given the time to file ran on. Therefore it did run on. Finally, although legally it may be immaterial, the delay, even if thirty days were taken as the limit, did not prejudice the insurer. The last report due was for February and the stocks were substantially the same for February as for January. It was only in March that the great increase took place and the insurer would not have known of this on April 28, 1934. The partial defence is bad.

 The total defence depends upon whether the insured fell within the scope of the clause which avoided the policy if it "has concealed or misrepresented any material fact or circumstance." Even though we assume with the insurer that the words, "held in trust," covered the bailed goods, the insured "had concealed" nothing material at the date from which the policy spoke—October 1, 1933. And, if one insists that the actual date of execution, January 17, 1934, must be taken, or that the warranty is promissory, the same result follows. Article 10 prescribed that "in case of loss the liability hereunder shall not exceed that proportion of such loss, which the last reported value * * * bears to the actual value of the property at that location at the time of such report." True, if the insured had misrepresented the val-

ue of goods at any "location" fraudulently, that would have voided the policy, for the clause so provides, and probably it was unnecessary anyway. But the insurer nowhere alleged any fraud, or proved any; the insured never meant to recover for the bailed goods. Fraud aside, the clause was merely another limitation of liability. The value of the goods in December was about $700,000, and the bailed goods were worth about $240,000; therefore, the clause would at most have cut the recovery to about three-quarters of the total loss, including the bailed liquors themselves. It is enough that no such partial defence was pleaded, proved or even argued, either in the trial court or here; and it is exceedingly doubtful, if it could have ever been made good if it had. The clause was in substance the usual "co-insurance clause," inserted in order to secure full valuation and thus to protect the insurer against the greater risks of partial losses. If it had appeared that the insured did not mean to include the bailed goods at all and that the insurer knew it, the clause did not apply. We know that the insured did not mean to include them, and we cannot say that the insurer would have been able to prove that it did not understand that the insured did not. Moreover, even if it had succeeded, at best the insured had merely mistaken the meaning of its policy; it is doubtful whether the clause extends to such situations. Atlantic Fruit Co. v. Hamilton Fire Ins. Co., 251 N.Y. 98, 104, 105, 167 N.E. 184.

Judgment affirmed.