# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,

v.

# GENERAL ELECTRIC COMPANY, Appellee.

No. 74–1974.

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1975.

Decided Jan. 22, 1976.

Marian Halley, Atty., E.E.O.C., Washington, D. C. (William A. Carey, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Asst. Gen. Counsels, E.E.O.C., Washington, D. C., on brief), for appellant.

John S. Battle, Jr., Richmond, Va. (J. Robert Brame, III, McGuire, Woods & Battle, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDNER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This action grew out of two charges of racial discrimination filed with the Equal Employment Opportunity Commission against the defendant General Electric Company. The first charge, filed by one Ford on May 19, 1969, complained of racial discrimination in promotion and job transfer; the second, filed by one Slaughter on September 22, 1969, charged racial discrimination in employment. Investigation of the two charges apparently proceeded separately. In any event, separate decisions were rendered by the EEOC in the two cases, and for some reason not indicated in the appellate record, the second charge was acted on first. The EEOC's "reasonable cause" determination on the Slaughter complaint was filed on December 27, 1971. It was not until May 11, 1972 that a "reasonable cause" determination was filed in the Ford case. In its determinations, the EEOC found "reasonable cause" to believe that the defendant had engaged in racial discrimination in its promotion and transfer practices involving the complainant Ford but had not engaged in racial discrimination in denying employment to the complainant Slaughter. To this extent, it affirmed the findings of its investigator "in their entirety" but, on a review of the "full investigative file"[1] it made additional findings of "reasonable cause" to believe the defendant had engaged in sex discrimination.[1a]

After the determinations of "reasonable cause" had been made in each case, the defendant was provided with a copy of the

EEOC's determinations and was invited to enter into conciliation as contemplated under the Statute. Before conciliation began in either case, the defendant wrote the EEOC to express its willingness to engage in conciliation but specifically reserved the right to refuse to consider conciliation of any "unrelated charges * * * beyond the original charge [of racial discrimination]." Conciliation in both cases was unsuccessful and this suit by the EEOC resulted. In its complaint the EEOC stated in separate counts claims of racial and sex discrimination. After some discovery, the defendant moved for summary judgment in its favor on the second count, charging sex discrimination. The basis of the motion, as phrased by the defendant, was that "no complaint based upon sex [had been] filed against the defendant * * *." The District Court sustained the motion and ordered judgment for the defendant on the second count of the complaint, i. e., the charge of sex discrimination.[2] The Commission has appealed. We reverse.

The District Court predicated its grant of summary judgment on want of "standing" on the part of the EEOC to maintain the action. In developing its reasoning in support of this ruling, it expressed approval of the rule as announced in *Sanchez v. Standard Brands, Inc.* (5th Cir. 1970) 431 F.2d 455, that the allowable scope of the judicial complaint is not fixed strictly by the allegations of the EEOC charge but rather by "the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[3] It,

---

1. *See* § 1601.19d, 29 C.F.R.

1a. These findings were as follows:
 10. As part of its hiring procedures, Respondent utilizes two different sets of test [sic] for male and female applicants. Male applicants are administered three tests—Wonderlic, Numerical (Arithmetic), and Mechanical Comprehension. Female applicants are administered two tests—Wonderlic and Peg Board (Manual Dexterity).
 11. Respondent's written hiring policy reads in part: "The only test for prospective female assembly operators that we assign any great weight to is the peg board (manual dexterity). In the instance of male candidates, me-

chanical comprehension and arithmetic ability are given some weight."

2. *Equal Employment Opportunity Com'n. v. General Elec. Co.* (W.D.Va.1974) 376 F.Supp. 757.

3. 376 F.Supp. at 760–1.
 *See, also, Belcher v. Bassett Furniture Industries, Inc.* (W.D.Va.1974) 376 F.Supp. 593, decided only two days later than this case by the same District Court, in which the Court said (p. 596):
 * * * Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the

also, accepted without question the reasoning in *King v. Georgia Power Company* (N.D.Ga.1968) 295 F.Supp. 943, that "the statute [*i. e.,* Title VII] would be subverted if the issues raised during conciliation efforts could not later be the subject of a civil suit," thereby assuming that, as other decisions have declared, the opportunity to conciliate is a crucial issue in determining the issues open for adjudication in the civil suit.[4] But, while it agrees that the civil suit is related in its scope to the investigation and may include other claims of discrimination than those stated in the charge filed with the EEOC if they reasonably "grow out" of the investigation, it held that this right to include an additional claim of discrimination uncovered in the investigation in the civil suit is limited to the claims "which might have been raised by the charging party." It reasoned that a claim of discrimination which the charging party had no standing to assert was necessarily a claim "which could not reasonably have been expected to grow out of the charge of discrimination." In further explication of its ruling, it stated that, if the charging party (Slaughter) had been a "black female" and had claimed in her charge only racial discrimination, it would have sustained the count on sex discrimination, based on facts uncovered in the investigation of the charge of racial discrimination, because "the discrimination uncovered" in those circumstances would "have had the *potential* of prejudicing the charging party * * *." It distinguished *Latino v. Rainbo Bakers, Inc.* (D.Colo.1973) 358 F.Supp. 870, because there the charging party was female and, though her charge related only to national origin discrimination, the sex discrimination uncovered by the investigation was a type of discrimination she had standing to raise in a civil suit since there was the "potential of" prejudice to her as a result of that discrimination. It dismissed as "not a crucial factor" that "the EEOC determined that there was no reasonable

cause to believe that Mr. Slaughter's charge was true" and declared that, "[T]he significant factor is whether he might have been subjected to type of discrimination alleged in the suit * * *," *i. e.,* whether he, a male, could have been prejudiced by sex discrimination directed at women. It concluded that since any claim of sex discrimination in this case could not have any "*potential* of prejudicing the charging party," there was no standing in the charging party or the EEOC to assert that claim in a suit arising out of the charges filed by either Ford or Slaughter, both males.

The District Court proceeded to add in its decision that, whenever there was any additional type of discrimination uncovered in the investigation of a charge by an "aggrieved" person which that "aggrieved" person himself lacked standing to assert, then that new discrimination could only be the subject of a civil suit after the filing of a new and separate Commissioner's charge, or presumably a charge by some "aggrieved person" who could be prejudiced by the discrimination, and after the EEOC had investigated and acted on this new charge. In justification of the requirement that the "discrimination uncovered" in the investigation of the initial charge, which the charging party was held to be without standing to raise, should be severed from the original proceedings and be converted into a new and separate proceeding predicated on a new charge, the Court declared that any other treatment of the discrimination would prejudice the employer in connection with possible backpay liability, and would represent a failure to follow "the procedure contemplated by Title VII and its [EEOC's] regulations * * *." Though it would require a new charge for a reasonable cause determination of sex discrimination, it seemingly recognized that the investigation of the charges filed by Ford and Slaughter had reasonably uncovered sex discrimination which, upon the filing of a new charge, could eventuate in a civil suit, and accord-

---

charge which originally triggered the investigation.

4. To the same effect is *Equal Employment Opportunity Com'n. v. Westvaco Corp.* (D.Md. 1974) 372 F.Supp. 985, 992.

ingly dismissed the count stating sex discrimination "without prejudice."

In its argument in this Court in support of the judgment below, the defendant, on the other hand, would give the charge filed by the "aggrieved" party a more constrictive effect on both the scope of the EEOC's action and of the civil action than did the District Court in its opinion. It did, however, concede the correctness of the District Court's ruling that a civil suit might be based properly on any additional claimed discrimination uncovered as a result of the investigation by the EEOC of the charge filed with it, provided the facts in support of that finding of discrimination reasonably grew out of the investigation of the charge. But it asserts on this appeal a more restrictive and limited application of this principle than did the District Court. While the District Court would limit that principle to situations where the discrimination uncovered was one that had the "potential" of prejudice to the charging party, the defendant would restrict its application not only by rules of standing, as did the District Court, but also by *type* of discrimination. It argues that any additional claim of discrimination, if it is to be included in a civil suit growing out of an investigation of the initial charge, must also qualify as a "like" or "related" type of discrimination to that charged and that in no event can racial and sex discrimination be regarded as "like" or "related" types of discrimination. Under this argument, the EEOC could never maintain a civil suit on, or, for that matter, make a "reasonable cause" determination of, sex discrimination where the charging party only claimed racial discrimination, however clearly the facts supporting sex discrimination may have been developed in,

or reasonably grew out of, the investigation of the racial charge made by the charging party. This contention, of course, would mean that, contrary to what the District Court held, the EEOC could not maintain a civil suit in this case on a charge of sex discrimination even if Slaughter had been a "female," and thus had standing to sue, under the District Court's theory of standing.

 We are of the opinion that both the District Court and the defendant attach too much importance to the charges as filed and fail to give proper effect to the Amendments of 1972 to Title VII. While it is true "the EEOC is without jurisdiction to proceed [in any case] in the absence of a valid charge, * * * [t]he purpose of the charge under section 706 is only to initiate the EEOC investigation,"[5] to "trigger the investigatory and conciliatory procedures of the EEOC."[6] The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation.[7] The charge merely provides the EEOC with "a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices;" and that investigation may well "disclose, as in this instance, illegal practices other than those listed in the charge"[8] and provide a basis for a reasonable cause determination with respect to those practices. The charge has been described, also, "as a starting point" for a reasonable investigation by the Commission, which may then "include in its deliberations [and base its determinations on] *all facts developed in the course of a reasonable investigation of that charge* * * *."[9] (Italics added) The EEOC has

**5.** *Graniteville Co. v. Equal Employ. Op. Com'n.* (4th Cir. 1971) 438 F.2d 32, 35 and 38.

**6.** *Sanchez v. Standard Brands, Inc., supra,* 431 F.2d at 466.

**7.** *Reeb v. Economic Opportunity Atlanta, Inc.* (5th Cir. 1975) 516 F.2d 924, 928.

**8.** *Equal Employment Op. Com'n v. Huttig Sash & Door Co.* (5th Cir. 1975) 511 F.2d 453, 455.

**9.** *Equal Emp. Op. Com'n v. E. I. DuPont de Nemours and Co., etc.* (D.Del.1974) 373 F.Supp. 1321, 1335.

Later, in this same case, the Court said (p. 1336):

* * * The Commission need not confine itself to the particular symptom of discrimination identified by a charge *if a reasonable investigation of that charge uncovers a root source of discrimination responsible for that*

the right during the investigation to compel the production of any material or evidence that has relevancy to any claim made in the charge.[10] If the EEOC uncovers during that investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon, thereby beginning again a repeti-

tive investigation of the same facts already developed in the ongoing investigation. To cast a blanket over such facts in the ongoing proceedings would be a violation of the EEOC's statutory obligation in the area of employment discrimination. To require a new charge based on those facts and to begin again the administrative process thereon, would result in an inexcusable waste of valuable administrative resources[11] and an intolerable delay in the enforcement of rights which require a "timely and effective remedy."[12] That

*and other violations of Title VII.* (Italics added)

**10.** §§ 2000e–8(a) and 2000e–9, 42 U.S.C.; *Graniteville Co. v. Equal Employ. Op. Com'n., supra,* 438 F.2d at 40; *Equal Emp. Op. Com'n. v. University of N. M., Albuquerque* (10th Cir. 1974) 504 F.2d 1296, 1301; *Motorola, Inc. v. McLain* (7th Cir. 1973) 484 F.2d 1339, 1342, cert. denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287 (1974). In the latter case, the Court said:

> Most of the courts which have considered the scope of the investigatory powers of EEOC have agreed that they are broad. *Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission,* 418 F.2d 355, 358 (6th Cir. 1969) ("Title VII . . . should not be construed narrowly . . ."); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 425 (8th Cir. 1970) ("Title VII of the Civil Rights Act of 1964 is to be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination"). One district court which sought to find that "Congress intended to deny the Commission the broad investigatory powers of other federal agencies . . ." was expressly reversed by the Court of Appeals. *Graniteville Co. v. Equal Employment Opportunity Commission,* 316 F.Supp. 1177, 1185 (D.S.Car.1969), rev'd, 438 F.2d 32, 39 (4th Cir. 1971).

This case draws upon the legislative history of the Amendments of 1972 to show that the Congress, which in its original action thought in terms of discrimination as expressed in "isolated and distinguishable events, due, for the most part, to ill-will on the part of some identifiable individual," had by 1972 begun to see employment discrimination as "a far more complex and pervasive phenomenon" expressed generally "through various institutional devices, and testing and validation requirements." (484 F.2d at 1344)

**11.** *See, also: Logan v. General Fireproofing Company* (W.D.N.C.1969) 309 F.Supp. 1096, 1100, aff., 4 Cir., 521 F.2d 881, where the Court, in answer to a similar contention, said that "to

limit the court and the Commission to the consideration of the charge itself would result in multiplicity of litigation and a burden upon the already overcrowded docket in the federal courts. There is nothing to indicate that Congress intended such a restrictive interpretation as requested by the defendant."

*Equal Emp. Op. Com'n. v. E. I. DuPont de Nemours and Co., etc., supra,* put the same idea thus (373 F.Supp. at 1335):

> * * * To mandate blinders for Commission investigations or to require that they pursue any additional discrimination disclosed by their investigation in a separate Commissioner's charge would be to sanction a waste of valuable and limited resources.

**12.** *Johnson v. Seaboard Air Line Railroad Company* (4th Cir. 1968) 405 F.2d 645, 651, cert. denied, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969), 5 A.L.R.Fed. 313.

*See, also, Equal Employ. Op. Com'n. v. Bartenders Int. U., Loc. U. No. 41* (N.D.Cal.1973) 369 F.Supp. 827, 831:

> * * * it would mean that in order to remedy the alleged violation here, the private party, would have to refile the complaint, or a member of the commission could file charges, and the administrative process would begin again. Since attempts at conciliation have not to this point been fruitful, this court cannot abide by an interpretation which would cause yet additional delays. The wrongs alleged, if true, have too long gone unremedied. To require that the administrative process begin again would be futile. As the court said in *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) in construing § 706(d) prior to the amendments:

>> "To require a second 'filing' by the aggrieved party . . . would serve no purpose other than the creation of an additional procedural technicality."

> This, too, would seem to be violative, at least of the spirit, of the statute, which includes a positive command to the Courts to expedite as far as practicable suits under the Title. § 2000e–5(b) and (c), 42 U.S.C.

procedure, as the Supreme Court said in a somewhat similar context in *Love v. Pullman Co.* (1972) 404 U.S. 522, 526, 92 S.Ct. 616, 619, 30 L.Ed.2d 679, "would serve no purpose other than the creation of an additional procedural technicality." [13] It would be simply a useless exercise in technical nicety. *So long as the new discrimination arises out of the reasonable investigation of the charge filed,* it can be the subject of a "reasonable cause" determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for *any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge,* provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.[14] This, after all, is substantially what we held in *Graniteville Co. v. Equal Employ. Op. Com'n., supra.* We said there that "evidence [developed in the investigation] concerning employment practices other than those specifically charged by complainants may properly be considered by the Commission in framing a remedy. Title VII of the

Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties." [15]

There is certainly nothing unusual or novel in sustaining an administrative determination or resting a judicial judgment on facts which were admitted or included, with the specific or implied knowledge and consent of the parties, in the agency investigation or in the trial record, especially where there is no substantial prejudice to any party by such procedure. This is in fact the established rule in the trial of civil cases in the federal courts. In such cases, any issues arising out of evidence admitted into the record without objection "must be 'treated in all respects as if they had been raised in the pleadings.' " [16] An instructive case on the application of this principle is *Securities and Exchange Commission v. Rapp* (2d Cir. 1962) 304 F.2d 786, 790. In that case, the District Court dismissed the complaint on the ground "that the pleadings did not conform to the proof" after denying a motion to amend at the end of the trial. On appeal, the Court, in reversing, said that formal amendment was unnecessary in the case, adding:

> * * * Indeed, formal amendment is needed [under Fed.R.Civ.P. 15(b)] only when evidence is objected to at trial as

---

13. See note 11.

14. *See, Equal Employment Opportunity Com'n. v. Westvaco Corp., supra* (372 F.Supp. at 992).
 *See, Equal Emp. Op. Com'n. v. E. I. DuPont de Nemours and Co., Etc., supra* (373 F.Supp. at 1336), where the Court said:
 * * * Since the determination of reasonable cause defines the framework for conciliation, it follows that the issues to be litigated here must be those which can fairly be said to be encompassed within the determination resulting from the Parker charge.
 On the requirement of conciliation, *see Equal Employment Opportunity Com'n. v. Westvaco Corp., supra* (372 F.Supp. at 992).

15. 438 F.2d at 42.

16. *Brown v. Ward* (4th Cir. 1970) 438 F.2d 1285, 1286; *O'Brien v. Moriarty* (1st Cir. 1974) 489 F.2d 941, 943; *Norris v. Bovina Feeders, Inc.* (5th Cir. 1974) 492 F.2d 502, 505–6; *Wasik v. Borg* (2d Cir. 1970) 423 F.2d 44, 46; *Petersen*

*v. Klos* (5th Cir. 1970) 426 F.2d 199, 202–3; *City of Green Cove Springs v. Donaldson* (5th Cir. 1965) 348 F.2d 197, 202; *Purofied Down Products Corp. v. Travelers Fire Ins. Co.* (2d Cir. 1960) 278 F.2d 439, 444; *Psinakis v. Psinakis* (3d Cir. 1955) 221 F.2d 418, 422–3; *Jackson v. Lloyd Brasileirs Patrimonio Nacional* (S.D.Texas 1970) 324 F.Supp. 556, 562, n. 10.

Thus, under this rule, as Professor Moore has said, "a plaintiff may sue on one contract and recover on another; may sue on the theory of respondeat superior and recover on the theory of the vicarious liability of an employer of an independent contractor; or may sue for patent infringement and also recover for unfair competition. The fact that this involves a change in the nature of the cause of action, or the legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting his case." Moore, *Federal Practice,* vol. 3, pp. 984–5.

not within the scope of the pleadings. And no objection on grounds of unfair surprise was or could have been made here; for, prior to trial, the S.E.C. made available to defense counsel the questionnaires it received in the investigation of the case which covered the expected testimony. The well known objective of the rule that cases should be decided on resolution of the actual dispute between the parties, rather than on the paper pleadings filed at the inception of suit, was thus frustrated [citing cases].[17]

This rule has been extended to the appellate level. In *Purofied Down Products Corp. v. Travelers Fire Ins. Co.* (2d Cir. 1960) 278 F.2d 439, 444, the Court said that, "[T]he issue was simply not raised by the pleadings. Nevertheless, we think that the admission by appellee's attorney that back premiums were due and owing constitutes a trial of the issue with appellee's implicit consent. Even though the appellate level has been reached, pleadings may be deemed amended to conform to the issues tried below." If, in the civil trial itself, the actual adjudication or judgment is to be based on the facts developed at trial rather than the

language in the pleadings, surely greater reason supports such a rule in administrative proceedings under a remedial statute, where the agency such as the EEOC, exercises no actual adjudicatory powers,[18] and is said not to be hamstrung by narrow procedural rules[19] and where there is no substantial prejudice to any party.[20]

■ It is interesting to note also in this connection that the jurisdiction of the NLRB, like that of the EEOC,[20a] can only be initiated by the filing of a charge, but once the jurisdiction of the NLRB is so invoked "the Board must be left free *to make full inquiry* under its broad investigatory power in order properly to discharge the duty of protecting public rights which Congress has imposed upon it" and in preferring its own charge or "complaint," after the investigation, the Board, while it lacks power "'*carte blanche* to expand the charge as they might please, or to ignore it altogether' * * * is not precluded from 'dealing adequately with unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board.'" *National Labor Relations Board*

---

**17.** *See, also, Jurinko v. Edwin L. Wiegand Company* (3d Cir. 1973) 477 F.2d 1038 at 1044–5, vacated and remanded on other grounds, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973). There, the Court said:

Although the judgment therefore cannot stand on the theory that the plaintiffs were discriminated against because they were *married* women, nevertheless, as discussed above, the evidence is sufficient to support the judgment on the theory that the plaintiffs were discriminated against because of their status as *women*. We recognize that the latter theory was not overtly an issue in the case, for the complaint alleged discrimination against married women and discrimination against women as such was not included in the list of contested issues contained in the pre-trial stipulation. An appellate court, however, may uphold a judgment on any theory which finds support in the record and may affirm the decision of a lower court if the result is correct "although the lower court relied upon a wrong ground or gave a wrong reason." Under Rule 15(b), F.R. Civ.P., 28 U.S.C., a liberal provision is made for amendments to conform the pleadings to the evidence, and this court may consider issues so raised even though no formal application is made to amend. See *Underwriters Salvage Co. of New York v. Davis and Shaw Furniture Co.*, 198 F.2d 450, 453 (10 Cir. 1952). "The fact that this involves a change in the . . . legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting his case."

**18.** *Reeb v. Economic Opportunity Atlanta, Inc.*, *supra* (516 F.2d at 929).

**19.** *Graniteville Co. v. Equal Employ. Op. Com'n., supra* (438 F.2d at 40–1; *Motorola, Inc. v. McLain, supra,* as quoted in note 10 (484 F.2d at 1342).

**20.** *Equal Employment Op. Com'n. v. Kimberly-Clark Corp.* (6th Cir. 1975) 511 F.2d 1352, 1360–1.

**20a.** Of course, there is a substantial difference between the ultimate powers of the NLRB and the EEOC. The NLRB does have adjudicatory powers and its adjudication can only be overturned through judicial appeal if not supported by substantial evidence; the EEOC, on the other hand, has no adjudicatory power and when it sues to enforce its findings, the judicial trial is *de novo. See* p. 370, *infra.*

*v. Fant Milling Co.* (1959) 360 U.S. 301, 308–9, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243. (Italics added) It is enough, as a recent case has phrased it, that "the specific allegations in the [initiating] charges and the allegations in the complaint [which is the charge filed by the Board itself as a result of the investigation for purposes of a Board adversary hearing] were closely related in time, and the evidence used as a basis for the complaint would *naturally have been gathered during a proper investigation of the charges.*" *N. L. R. B. v. Rex Disposables* (5th Cir. 1974) 494 F.2d 588, 590 (Italics added). The test, as stated in this case, is whether, on the entire record, the new charge appears to be one "initiated" by the agency or one that grows reasonably out of the investigation of the initial charge. The application of such a rule preserves sufficient "nexus" [20b] or link between the initiating charge and the subsequent Board action. This is the same rule that we apply here. Applying that rule, it would appear to be indisputable that the employment tests on which the EEOC claims of sex as well as of racial discrimination rested in this case and which were identified in Slaughter's charge as the cause of discrimination constituted "evidence * * * [which] would naturally have been gathered during a proper investigation of the charges," and thus represented a basis for the reasonable cause determination as made by the EEOC.[21]

If we accept the premise, as we think we must, that the proceedings by the EEOC and the judicial suit may be as broad as the facts developed in a reasonable investigation of the charge will warrant, there can be no real dispute that the facts which the EEOC found in this case to justify a claim of sex discrimination were developed in the course of a reasonable investigation of the charges filed by Ford and Slaughter and were incorporated in the reasonable cause determination made by the EEOC and in its offer of conciliation. The charge of Slaughter asserting discrimination in employment practices by the defendant referred particularly to certain tests required of all job applicants by the defendant. It was quite proper and reasonable, especially after *Griggs,*[22] for the EEOC in those circumstances to have requested access to those tests. Had the defendant not agreed that such tests were relevant to the investigation of the charges filed, it is safe to assume it would have objected to their production. When produced, those tests represented "a root source of discrimination" that were both racial and sexual.[23] Those tests, *which were voluntarily produced by the defendant itself,* constituted the evidence stated by the EEOC as authorizing its findings of reasonable cause. Those findings provided a proper foundation for the administrative action taken by the EEOC and for this subsequent suit claiming both racial and sex discrimination.[24]

The defendant claims, however, and the District Court somewhat concurs in the contention, that the failure to file a new Commissioner's charge of sex discrimination prejudiced it by depriving it of the opportu-

---

**20b.** *See, Equal Emp. Op. Com'n. v. E. I. DuPont de Nemours and Co., etc., supra* (373 F.Supp. at 1334–5).

**21.** We would emphasize that by our reference to these tests we do not mean to express any opinion as to whether those tests are in fact discriminatory. They were simply the evidence relied on by the EEOC for its determinations. Its determination as to the tests is neither binding on the Court in the *de novo* trial to which under the Act the defendant is entitled nor reviewable by the Court. The actual determination whether the tests are discriminatory, either racially or sexually, is an issue for adjudication solely by the Court in this proceeding. *See* notes 30, 31, 33, *infra.*

**22.** *Griggs v. Duke Power Co.* (1971) 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158.

**23.** *See, Equal Emp. Op. Com'n. v. E. I. DuPont de Nemours and Co., etc., supra* (373 F.Supp. at 1336), quoted in note 9.

**24.** *See, Equal Emp. Op. Com'n. v. Louisville & Nashville R. Co.* (5th Cir. 1974) 505 F.2d 610, 617 (appeal pending); *Oubichon v. North American Rockwell Corporation* (9th Cir. 1973) 482 F.2d 569, 571; *Macklin v. Spector Freight Systems, Inc.* (1973) 156 U.S.App.D.C. 69, 478 F.2d 979, 988; *Tipler v. E. I. duPont deNemours and Co.* (6th Cir. 1971) 443 F.2d 125, 131.

nity granted under the EEOC's regulations to submit comments on this new claim,[25] *even though that claim was made obvious by the defendant's own production of material.* It might be observed in this connection that this will always be true if the "reasonable cause" determination is broader in any respect than the charge as filed. In those circumstances the employer would not have had an opportunity to comment on the broader claim set forth in the "reasonable cause" determination or asserted in the civil suit. Thus, if the charge is discrimination in employment, this argument would preclude the EEOC from making a "reasonable cause" determination stating discrimination in promotion or seniority rights or from instituting a civil suit on this new claim. Yet both the District Court and the defendant concede, as we have already pointed out, that both the "reasonable cause" determination and the civil suit may embrace an additional charge of discriminatory employment practices if the facts in support of those discriminations reasonably grew out of the investigation of the filed charge. The defendant apparently recognized this inconsistency in its position for it sought, as we have already indicated, to claim that the additional discriminatory practices must be "like" or "related" to that charged and that for purposes of determining likeness and relative claims, *racial* and *sex* discrimination cannot be considered "like" or "related" in any event.[26] We find no logical basis for this contention. The reasonable cause determination of both racial and sex discrimination here rested on the testing practices employed by the defendant. The instrument or method of claimed discrimination in both the racial and sex claims was thus the same, *i. e.,* the use of tests that discriminated both in race and sex. Are not the two claims "like" or "related" since both involve a common pattern of discrimination, a like "root source" involving "practices and devices" that discriminate?[27] Nor does the statute or the decisions construing it provide any authority for this contention of the defendant. *Equal Emp. Op. Com'n. v. Louisville & Nashville R. Co., supra* (505 F.2d at 612), demonstrates the untenability of the argument. There the charging party claimed he was discharged "because of his race." The Commission found that the charging party "was not discharged because of race." It proceeded, though, to find that the employer "had a practice of considering arrest records and using certain pre-employment tests in its hiring decisions, which provided reasonable cause to believe L & N was engaging in unlawful employment practices." Was the EEOC's claim to be dismissed because it was not "related" to or "like" the charge filed? An objection to this effect was summarily dismissed by the Court, which, after stating that the objection was "to the difference between the initial charge of racial discrimination filed by Thomas and the Commission's findings concerning use of arrest records and pre-employment tests," said, "[W ]e find that objection to be without merit. *See Sanchez v. Standard Brands, Inc.,* 5 Cir., 1970, 431 F.2d 455, 466."[28]

---

**25.** § 1601.14, 29 C.F.R. (1970).

**26.** The defendant relies primarily for its contention in this regard on *Equal Employment Op. Com'n. v. Western Electric Co., Inc., supra* (382 F.Supp. at 799) but this case must be read in conjunction with *Equal Employ. Op. Com'n. v. Raymond Metal Prod. Co.* (D.Md.1974) 385 F.Supp. 907, decided by the same Court, where the rationale of the earlier decision was stated. In this latter case, the Court said (p. 916):

\* \* \* The reason for limiting the scope of the complaint in the *Western Electric* case was the failure of EEOC to fully investigate and conciliate the allegation of sex discrimination prior to bringing suit in federal court, as is clearly required by Title VII.

**27.** *Cf., Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147.

**28.** 505 F.2d at 617. *Cf., also, New Orleans Public Service, Inc. v. Brown* (5th Cir. 1975) 507 F.2d 160, *reversing,* D.C., 369 F.Supp. 702.

To repeat: When the same material, *i. e.,* the tests used by the defendant, give rise to a reasonable cause to believe the defendant thereby is practicing discrimination both racial and sexual, the EEOC need not confine its actions to the racially discriminatory aspects of the testing program but may "include in its deliberations all facts developed in the course of a reasonable investigation of that charge"[29] and may predicate a reasonable cause determination thereon. This is the rule as enunciated in *Equal Emp. Op. Com'n. v. E. I. DuPont de Nemours and Co., Etc., supra* (373 F.Supp. 1321), and as followed in *Equal Employment Op. Com'n. v. Huttig Sash & Door Co., supra* (511 F.2d 453), and *Equal Employment Op. Com'n. v. Kimberly-Clark Corp., supra* (511 F.2d 1352), as we read those decisions. And any claim included properly in the reasonable cause determination and offer to conciliate may be the basis of a civil suit, if conciliation on that claim fails.

■ Nor can it be said with any show of reason that the defendant suffered any "substantial prejudice" by the failure of the EEOC to sever the sex discrimination claim from the ongoing investigation and to file a new Commissioner's charge thereon, thereby affording the defendant an opportunity to comment on the tests which were the only basis relied on by the EEOC for its reasonable cause determination of sex discrimination. This is so because the EEOC has no adjudicatory power.[30] Its proceedings are not binding on the employer and they are not reviewable.[31] Its proceedings are purely non-adversary.[32] Adjudication is the exclusive function of the courts under the Act. And the court trial is *de novo,* completely separate from the actions of the EEOC.[33] In fact, the refusal to admit the administrative records into evidence in the civil trial has been held not to be error.[34] That the procedure followed by the EEOC prevented the defendant from commenting on the tests before the EEOC made its reasonable cause determination resulted in no prejudice to the defendant follows from the fact that, as the Court in *Latino* bluntly put it, the employer "still has the chance to present its side of the story in court."[35] Because any failure by the EEOC to extend to the defendant the opportunity to comment on the sex discrimination claim uncovered by the defendant's own presentation inflicted "no significant injury on the party entitled to observance of the rule, [of the EEOC granting such right] the error does [if there was any in the EEOC proceedings

---

**29.** See note 9.

**30.** *See Alexander v. Gardner-Denver Co., supra* (415 U.S. at 44, 94 S.Ct. at 1018):
\* \* \* The Commission cannot adjudicate claims or impose administrative sanctions. Rather, final responsibility for enforcement of Title VII is vested with federal courts.

**31.** *Equal Employment Op. Com'n. v. Western Electric Co., Inc., supra* (382 F.Supp. at 794); *Equal Emp. Op. Com'n. v. E. I. DuPont de Nemours and Co., etc., supra* (373 F.Supp. at 1338):
\* \* \* It does not follow, however, that Congress intended the federal courts to review Commission determinations of reasonable cause to see if they are supported by insubstantial evidence or, as here alleged, by inapplicable statistics. It is one thing for courts to insist upon procedural compliance with the Act and quite another for them to test the factual basis for Commission action. The potential for delay and diversion which such an undertaking would create is substantial; the limited benefit to be derived from such an approach is insufficient to outweigh this drawback. The Commission's determi-

nation does not establish rights or obligations; the respondent is entitled to a trial *de novo* in the district court. If the charge is frivolous or misdirected, procedures are there available by which the respondent may extricate himself from liability.
*See, also, Ewing v. Mytinger & Casselberry* (1949) 339 U.S. 594, 600, 70 S.Ct. 870, 94 L.Ed. 1088.

**32.** *Graniteville Co. v. Equal Employ. Op. Com'n., supra* (438 F.2d at 37).

**33.** *Salone v. United States* (10th Cir. 1975) 511 F.2d 902; *United States v. H. K. Porter Company* (N.D.Ala.1968) 296 F.Supp. 40, 57.

**34.** *Cox v. Babcock and Wilcox Company* (4th Cir. 1972) 471 F.2d 13, 15; *Moss v. Lane Company, Incorporated* (4th Cir. 1973) 471 F.2d 853, 856; *Gillin v. Federal Paper Board Company, Inc.* (2d Cir. 1973) 479 F.2d 97, 100; *Veazie v. Southern Greyhound Lines* (E.D.La.1974) 374 F.Supp. 811, 815.

**35.** 358 F.Supp. at 872.

here] not prevent further administrative or judicial action," particularly since the error, if any, occurred "when the agency is not itself adjudicating but is conducting preadjudication activities."[36] It is only when "noncompliance" with the agency's regulations "results in prejudice" that it will void or abate the administrative proceedings.[37]

■ It is perhaps not amiss to observe, too, that the defendant was actually accorded an opportunity to comment on the claim of sex discrimination while the charges were still involved in EEOC proceedings and before any suit was filed. And it would appear it exercised that right. After the defendant was duly notified of the reasonable cause determination of racial and sex discrimination by the EEOC, the defendant did comment on the one fact stated by the EEOC as a basis for its findings of possible sex discrimination, i.e., the tests used by the defendant. The defendant's comment, as submitted to the conciliator representing the EEOC in the conciliation of the reasonable cause determinations was that "we no longer do our own testing of factory people, but rather have it performed by the Virginia Employment Service." It chose to make no other comment on the tests. This single statement of the defendant on the tests prompted an answer from the EEOC to the effect that it regarded the "General Aptitude Test Battery" (which presumably were tests used by the defendant) as not validated under its testing guidelines and that it required the elimination of the use of such tests whether by the defendant or by the Virginia Employment Commission on behalf of the defendant. The EEOC, through its administrator, concluded this letter of its position by stating that an agreement by the defendant to

discontinue such tests "would satisfactorily resolve the issue of testing." The record includes no reply by the defendant to this offer. As a practical matter, it would seem the defendant was thus given by the EEOC its right of comment and merely because it came during conciliation rather than before the reasonable cause determination would appear immaterial. It had the opportunity to present its position during the administrative proceedings and it now has the opportunity of adjudicating that position in this suit. It suffered no prejudice in the EEOC proceedings by a denial of an opportunity to present its position nor will it be prejudiced in the court proceeding where it will be free to offer any defense it wishes to the claims of discrimination, both racial and sexual.

■ The defendant, as well as the District Court, however suggests that the defendant may suffer prejudice in connection with backpay liability if the EEOC is not to be required to file a new charge on any claim of discrimination other than the specific one stated in the filed charge. The basis for this contention is that the Act limits the right to backpay to a period of two years prior to the filing of the charge with the EEOC.[38] It argues that to entertain suit on this claim of sex discrimination would lay it open under the decision in Moody[39] to backpay liability for a period of some four years before it received any notice that a claim of sex discrimination was being asserted. And it asserts Moody would make such allowance almost mandatory. Moody, while stating that the allowance of backpay is the normal procedure in Title VII cases, did not, though, establish an absolute rule of backpay liability in any case where discrimination was found; it

**36.** Equal Employment Op. Com'n. v. Kimberly-Clark Corp., supra (511 F.2d at 1360–1).

**37.** See, McCourt v. Hampton (4th Cir. 1975) 514 F.2d 1365, where the Court said:

This court has been and will be as assiduous in requiring the government to live up to regulations for the conduct of its own affairs when noncompliance results in prejudice to an adverse party, see, e. g., United States v. Heffner, 420 F.2d 809 (4 Cir. 1969), as it has

and will continue to be in requiring a private citizen to regulate and conduct himself and his affairs in accordance with federal law. (p. 1370) (Emphasis added)

**38.** § 2000e–5(g), 42 U.S.C.

**39.** Albemarle Paper Co. v. Moody (1975) 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (decided June 25, 1975).

recognized that the right might be denied where the allowance would "improperly and substantially" prejudice the other party.[40] And it may well be that there would be "substantial prejudice" within the intent of the Act if any date earlier than that on which the employer was given notice of the claimed discrimination was used as the critical date for calculating a claim for backpay. This was the date Congress seemingly intended as the critical date for such purpose. To limit the right to backpay in this case (assuming, of course, the EEOC should prevail), to the period of two years before notice of the claim was given the defendant by the filing of the EEOC's determinations of "reasonable cause" would be clearly within the discretion of the trial court and in keeping with the legislative intent; in fact, to hold otherwise would be an abuse of discretion in this case, provided there were no countervailing equities. Whether such equities exist is a matter better to be resolved after trial. Assuming no countervailing equities, which would justify different treatment, the defendant can suffer no "substantial prejudice" in its liability for backpay as a result of entertaining in this suit the count claiming sex discrimination.

As we have indicated, however, the District Court did not primarily rely for its conclusions on a strict construction of the filed charge in the same way as did the defendant. It seemingly accepted the principle that the EEOC could maintain a civil suit on any discrimination uncovered as a result of a reasonable investigation of the initial charge but with this proviso: That discrimination must be one which the charging party had standing to assert. The heart of its decision is thus standing. In ruling that the standing of the EEOC to sue was thus no greater or broader than that of the charging party, the District Court, however, failed to give proper effect to the Amendments of 1972.

Prior to the Amendments, the EEOC lacked any "coercive enforcement powers." Its role was simply that of "the conferee, conciliator and uncoercive persuader."[41] It had no right to enforce the Title by instituting a civil action in its own name. Any judicial action under the statute was required to be strictly "a private action in the name and at the instance of an aggrieved party."[42] The rationale for this original restriction of the Commission to a wholly investigatory and conciliatory role was that "'discrimination in employment [was] thought of] as a private rather than a public wrong, a wrong, to be sure, which entitles the damaged party to judicial relief, but not one so injurious to the community as to justify the intervention of the public law enforcement authorities.'"[43]

By 1972, however, Congress had come to recognize discrimination in employment as a "societal" wrong,[44] calling pri-

---

**40.** P. 366.

**41.** *Equal Employment Opportunity Com'n v. Cleveland Mills Co.* (4th Cir. 1974) 502 F.2d 153, 155, *cert. denied*, 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975). *See, also,* Berg, *Equal Employment Opportunity Under the Civil Rights Act of 1964*, 31 *Brooklyn L.Rev.* 62 (1964–65); Note, 32 *U.Chi.L.Rev.* 430 (1965).

**42.** *Equal Employment Opportunity Com'n v. Cleveland Mills Co., supra* (502 F.2d at 155).

**43.** *See, Johnson v. Seaboard Air Line Railroad Company, supra* (405 F.2d at 652, n. 16 (quoting from 31 *Brooklyn L.Rev.* at 67); Note, *Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 *Harv.L.Rev.* 1109, 1196–7 (1971).

**44.** *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 801, 93 S.Ct. 1817, 36 L.Ed.2d 668.

*See, also, Equal Employment Opportunity Com'n v. Eagle Iron Works* (S.D.Iowa 1973) 367 F.Supp. 817, 824:

The legislative history of the Equal Employment Opportunity Act of 1972 clearly indicates that discrimination in employment is considered a *societal* ill and that its elimination is a paramount *public* concern: (followed by a quotation from the Congressional Report)

\* \* \* \* \* \*

This strong statement of Congressional commitment to equal employment opportunities as a national goal makes it clear that the interest being protected by the EEOC in seeking to force compliance with Title VII is a public interest, notwithstanding the fact that the immediate beneficiaries of the EEOC's

marily for public enforcement, and it was of "the opinion that the voluntary system of enforcement, supplemented only by the strictly confined private right of action, had proven inadequate to achieve the objectives of Title VII." [45] It "considered the policy against discrimination to be of the 'highest priority.'" [46] It accordingly gave to the EEOC in the Amendments what it had denied it in the original Act, *i.e.,* a right to sue in its name to correct any discrimination uncovered legitimately during an investigation conducted as a result of the filing of a valid charge,[47] thereby enlarging "the EEOC's role of conciliator" to that of the "enforcer" as well.[48]

 While the Amendments did not eliminate or disturb the statutory provisions for suit by the charging party, it was clear that Congress intended by these Amendments to place "primary reliance upon the powers of enforcement to be conferred upon the Commission, [by the Amendments in their grant to it of the power to sue] and not upon private lawsuits, to achieve equal employment opportunity." [49] But, unlike the individual charging party, the EEOC, when it sued, did so "to vindicate the public interest" as expressed in the Congressional purpose of eliminating employment discrimination as a national evil rather than for the redress of the strictly private interests of the complaining party.[50] Because of this significant difference, the EEOC's suit was "broader [in scope] than the interests of the charging parties." [51] It follows that the standing of the EEOC to sue under Title VII cannot be controlled or determined by the standing of the charging party to sue,

limited as he is in rights to the vindication of his own individual rights. To hold otherwise, as did the District Court, would be to continue treating the sole purpose of the Title to be the correction of individual wrongs rather than of public or "societal" wrongs as well as to deny to the EEOC the right to be any more than a mere proxy for the charging party rather than what Congress by the Amendments of 1972 intended, *i.e.,* the public avenger by civil suit of any discrimination uncovered in a valid investigation and subjected to conciliation under the Act. We find no warrant whatsoever for placing such limitation on the right or standing of the EEOC to bring suit; indeed, were such limitation to be imposed, it would be in our opinion a clear nullification of the legislative intent in enacting the Amendments of 1972. We are confirmed in this opinion by two recent well-reasoned decisions in which the Court refused to deny standing to sue to the EEOC simply because the charging party did not have such standing or had lost it.

In *Equal Employment Op. Com'n. v. Huttig Sash & Door Co., supra* (511 F.2d 453), the charging party, a male, filed a complaint of racial discrimination. Following the investigation of that charge, the EEOC made a "reasonable cause" determination of no racial discrimination but of sex discrimination, which was, of course, similar to the disposition of Slaughter's claim in this case. The charging party then sued on his claim of racial discrimination. That suit was dismissed with prejudice. The "sole issue" on appeal was "whether after the termination

efforts may be private individuals. (Italics in opinion).

**45.** *Equal Employment Opportunity Com'n. v. Cleveland Mills Co., supra* (502 F.2d at 156).

**46.** *Alexander v. Gardner-Denver Co., supra* (415 U.S. at 47, 94 S.Ct. at 1019).

**47.** For a review of the background of this part of the Amendments of 1972, *see Equal Employment Op. Com'n. v. Kimberly-Clark Corp., supra* (511 F.2d at 1357), and *Motorola, Inc. v. McLain, supra* (484 F.2d at 1342–5).

**48.** *Equal Employment Opportunity Com'n v. Cleveland Mills Co., supra* (502 F.2d at 155–6);

*Equal Employment Op. Com'n v. Kimberly-Clark Corp., supra* (511 F.2d at 1357).

**49.** *Equal Employment Opportunity Com'n v. Cleveland Mills Co., supra* (502 F.2d at 156).

**50.** *Equal Employment Op. Com'n v. Kimberly-Clark Corp., supra* (511 F.2d at 1361).

*See Equal Employment Opportunity Com'n v. Eagle Iron Works, supra* (367 F.Supp. at 818).

**51.** *Equal Employment Op. Com'n v. Kimberly-Clark Corp., supra* (511 F.2d at 1361).

of a charging party's private suit the EEOC could [can] bring suit predicated on, but not limited to, the same charge." [52] The Court concluded that although the charge of racial discrimination by the aggrieved person might have been finally determined on principles of res judicata, the EEOC's right to sue on the new charge of sex discrimination, *which the aggrieved person as a male was without standing to pursue,* remained and could not be cut off by the complaining party (p. 455):

> * * * If upon investigating a particular charge of discrimination (which itself might be relatively minor) the EEOC discovers other discriminatory practices, surely the EEOC should not be prevented from taking appropriate action on those newly discovered practices simply because the charging party settles his suit with the employer.

In *Equal Employment Op. Com'n. v. Kimberly-Clark Corp., supra* (511 F.2d 1352), the issue was whether, in filing a civil suit under the Act, the EEOC could file suit covering discriminating practices going beyond those stated in the private suit of the "aggrieved" or charging party. The Court held it could, stating (at 1363):

> The EEOC's suit encompasses allegations that extend beyond Munn's private complaint, both in the scope of concern and in the extent of relief sought. * * Indeed, allowing the EEOC to assert its own cause of action alleging racial discrimination furthers the basic purpose of the 1972 amendments to Title VII—to give the EEOC authority to prevent violations of Title VII.

We do not find the authorities cited by the District Court in support of its finding of want of standing on the part of the

EEOC at all persuasive. In one of the cases cited, *Equal Emp. Op. Com'n. v. New York Times Broad. Serv., Inc.* (W.D.Tenn.1973) 364 F.Supp. 651, the Court relied for its conclusion primarily on the statement in *King* that " * * * the EEOC is not free to manipulate the scope of a case beyond the bounds herein expressed * * * limited to the issues that a particular complainant has standing to raise." [53] It overlooked the fact that *King* was decided under the provisions of the original Act, when the EEOC had no right to sue and when the only right to file a civil suit under the Act was vested in the charging party. Obviously, the right to sue on any discriminatory claim under those circumstances was dependent upon the standing of the charging party to assert such claim. That ruling, however, was nullified by the Amendments which conferred on the EEOC the right to sue as a public enforcer.

The other case, *Equal Employment Op. Com'n. v. Hickey-Mitchell Co.* (E.D.Mo.1973) 372 F.Supp. 1117, is unclear as to the basis of its ruling but it would be inferable, since it cited and relied on *Fix v. Swinerton and Walberg Company* (D.Colo.1970) 320 F.Supp. 58, (also a pre-Amendment case) as authority for its conclusion, that it presented the same issue as was involved in that case. The decision in *Fix* turned on the fact that the act of discrimination on which the EEOC sought to base its action had never been presented to or acted on by the EEOC administratively.[54] In any event, on appeal, this was the issue on which the Circuit Court reached its conclusions.[55]

For the reasons given, the order dismissing, without prejudice, the second count of the complaint herein stating a claim of sex discrimination, was improperly granted. The judgment of the District Court is ac-

---

**52.** 511 F.2d at 454.

**53.** 364 F.Supp. at 653.

**54.** 320 F.Supp. at 59.

*See Willis v. Chicago Extruded Metals Company* (N.D.Ill.1974) 375 F.Supp. 362, 365, where the Court stated the only real limitation on the scope of the judicial suit is that it "cannot be

based upon wholly new derelictions * * * not presented to or considered by the Commission."

To the same general effect are *Held v. Missouri Pacific Railroad Company* (S.D.Tex.1974) 373 F.Supp. 996, 1001; *Beckum v. Tennessee Hotel* (W.D.Tenn.1971) 341 F.Supp. 991, 995.

**55.** *See,* 507 F.2d 944.

cordingly reversed, with directions to reinstate such count.

Reversed and remanded with directions.

WIDENER, Circuit Judge (dissenting):

I respectfully dissent.

I am of opinion that the Equal Employment Opportunity Commission has failed to observe its own rules and procedures in determining that there was reasonable cause to believe that General Electric discriminated on the basis of sex. Whether, in fact, the EEOC's conclusion in this regard is correct is of no moment, for the only question before us is whether the district court erred in granting summary judgment in favor of GE on the ground that "no complaint based upon sex [was] filed against the [appellee] * * *." [1]

The EEOC's published regulations provide that "[t]he Commission will receive information concerning alleged violations . . . from any person," and that a charge may be filed by any person claiming to be aggrieved, as well as any member of the Commission itself.[2] Any such charge so filed must be submitted "in writing and [be] signed, and . . . sworn to before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths, and take acknowledgments."[3] Notice of the alleged discriminatory acts must thereafter be forwarded to the employer within ten days and include "the date, place and circumstances" of the alleged unlawful employment practice.[4] The EEOC is then required to investigate the complaint, at which time the employer "*shall* be offered

an opportunity to submit a statement of its position or evidence with respect to the allegations."[5] (Emphasis added). Only after such an investigation and before any determination as to whether there is reasonable cause to believe that an unlawful employment practice has occurred may the Commission engage in "predetermination" "settlement discussions."[6] After a finding of reasonable cause, conciliation efforts on the part of EEOC are limited to attempting to "achieve a just resolution and . . . obtain assurances the respondent will eliminate the unlawful employment practice and take appropriate affirmative action."[7] There are no further administrative "settlement discussions" once a finding of reasonable cause has been made, conciliation after that time going only to the remedy.

In the instant case, the controversy arose as a result of a charge filed with the EEOC by one Scott Slaughter, a black man. In his complaint, Slaughter alleged that General Electric had refused to hire him because of his race, and stated:

"Three weeks ago, I was referred to the G.E. plant in Lynchburg, Virginia for employment by David C. Cox, Asst. Job. Spec., Lynchburg Community Action Group, Inc. "I successfully completed the exams that were given and handled myself well during the interviews. Afterwards, I was told that I would be notified as to when I should come for the physical exam.

"Before I was notified to report for the physical, Mr. Frank Faggiano, Emp. Specialist at G.E. called Mr. Cox in reference to other referrals; and during the conversation Mr. Faggiano asked Mr. Cox if

---

1. In *United States v. Heffner*, 420 F.2d 809, 813 (4th Cir. 1970), we construed this rule which we there called the *Accardi* doctrine (*Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1953)) as "requir[ing] reversal irrespective of whether a new trial [would] . . . produce the same verdict." Application of our own rule here would require affirmance.

I do not reach the constitutional questions raised and express no opinion as to them. *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Mr. Justice Brandeis concurring).

2. 29 CFR § 1601.5; 29 CFR § 1601.6; 29 CFR § 1601.10.

3. 29 CFR § 1601.8.

4. 29 CFR § 1601.13.

5. 29 CFR § 1601.14.

6. 29 CFR § 1601.19a.

7. 29 CFR § 1601.22.

I were a Black Panther. (Mr. Cox will verify this).

"After I had taken the physical, Mr. Faggiano said he couldn't hire me because I have Hay Fever.

"I served in the USMC from 1960 to 1967, during which time I spent 13 months in Viet Nam. (With Hay Fever). After I was discharged 'Honorably' I worked in a factory in California. (With Hay Fever).

"I feel that I was denied a job at G.E. because I'm black and because of Heresay, [sic] which Mr. Gaggiano failed to confront me with."

Nowhere in his complaint did Slaughter allege facts which could in any way imply that the employment practices of General Electric unlawfully discriminated against women. The sole basis for Slaughter's charge was his claim that GE had denied him employment due to his race.[8]

Subsequent to the filing of the complaint, in the words above quoted, the director of the EEOC's Washington area office investigated GE's hiring practices. At that time, and in accordance with the Commission's regulations, GE was afforded the opportunity to submit a statement of its position and any evidence which it had regarding Slaughter's allegations. Based upon this investigation and the evidence submitted by GE, the area director issued certain findings of fact. These findings made no mention of sex discrimination nor did they allude to it. The Commission, upon its subsequent review of these findings, concluded that race was not a factor in GE's refusal to hire Slaughter. The EEOC added to the director's findings of fact, however, by including the following:

"10. As part of its hiring procedure Respondent utilizes two different sets of test [sic] for male and female applicants. Male applicants are administered three tests—Wonderlic, Numerical (Arithmetic), and Mechanical Comprehension. Fe-

male applicants are administered two—Wonderlic and Peg Board (Manual Dexterity).

"11. Respondent's written hiring policy reads in part: 'The only test for prospective female assembly operators that we assign any great weight to is the peg board (manual dexterity). In the instance of male candidates, mechanical comprehension and arithmetic ability are given some weight.' "

Based upon these additional findings, the Commission, without affording GE an opportunity to refute, explain, or offer evidence with respect to them as it had done in the case of Slaughter's original allegations of racial discrimination, conclusively found that there was reasonable cause to believe that the appellee had unlawfully discriminated against women, white as well as black, in violation of Title VII.

Thus, without any complaint having been filed alleging sex discrimination in hiring; without any notice having been given GE regarding "the date, place and circumstances" of the alleged sex discrimination; without GE having been "offered an opportunity to submit a statement of its position or evidence with respect to the allegation"; and without any "settlement discussions" having been entered into; the EEOC conclusively found that there was reasonable cause to believe that GE was engaging in unlawful employment practices respecting sex, not race. It was then too late for GE to refute the charge or offer evidence with respect to it, or even settle it; all it could do was enter into conciliation discussions regarding the manner in which the previously found violation could best be remedied.

The majority contends that both GE and the district court attach too much importance to the charge as filed. While it concedes that "the EEOC is without jurisdic-

---

**8.** The majority also refers to the complaint filed by one Ford just prior to Slaughter's complaint. That charge also referred to racial discrimination and has no relevance here since the EEOC's finding of sex discrimination is based solely upon the record made in investigating Slaughter's claim. The decision of the EEOC in Ford's case, App. p. 39, makes no mention of any discrimination based on sex as does the decision in Slaughter's case found at App. p. 43.

tion to proceed [in any case] in the absence of a valid charge," it concludes that, once filed, a charge will support an action by the Commission for "any discrimination . . . developed in the course of a reasonable investigation of that charge," regardless of any lack of notice given the employer or lack of opportunity on his part to respond. Nor does the majority mention the equally important deprivation—the denial of an opportunity to engage in the initial predetermination settlement discussions.

Not all courts, however, have approved such disregard of the EEOC regulations. And the fact that the EEOC itself is the violator of the regulation here makes cavalier an apt adjective with which to describe its conduct. In *Jenkins v. Blue Cross Mutual Hosp. Inc.*, 522 F.2d 1235 (7th Cir. 1975), the court concluded that the failure of the plaintiff in that action to allege sex discrimination in her charge before the EEOC precluded her from raising the issue before the district court in a Title VII action.

There, the litigation began when the plaintiff completed an EEOC charge form naming her employer as the party which had discriminated against her. She checked the box marked "Race or Color" and made the following statement to explain what in her view constituted the "unfair thing" which had been done to her:

"I feel that I am being discriminated in the terms and conditions of my employment because of my race, Negro. I have worked for Blue Cross and Blue Shield approx. three years during which time I no problem until May, 1971 when I got my natural hairstyle. Later when I came up for promotion it was denied because my supervisor, Al Frymier, said I could never represent Blue Cross with my Afro. He also accused me of being a leader of the girls on the floor. The pressure I was working under kept me upset, therefore, I asked for a leave of absence. I was told I had to take a vacation before I could be granted a leave of absence. I was granted a week vacation and on my return I was asked to take a 90-day leave, quit, or be fired, time they said to get myself·

together; at the end of this time they would be able to place me on another job. A White employee who associated with me might have been denied her promotion because of her association with me."

The court, in reviewing the·facts, agreed that the rule as stated in the case of *Danner v. Phillips Petroleum Co.*, 447 F.2d 159 ·(5th Cir. 1971), should be followed in determining the proper scope of the allegations in the complaint when compared with the original charge filed with the EEOC. The court in *Danner* said:

"[T]he correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that 'the complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations.'" 447 F.2d at 162.

Based upon these general principles, the court was unanimously of the view that the charge did not form a proper basis under Title VII for any complaint of discrimination on the basis of sex.

The majority here, however, relies primarily upon *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), in support of its position. The complainant in that case filed an original charge with the EEOC alleging certain facts and indicating in the appropriate place on the Commission form that she believed she had been discriminated against on the basis of her sex. But an amended charge, the filing of which was approved by the court, charged both discrimination by reason of sex and national origin. The EEOC concluded that there was no reasonable cause to believe that the company had discriminated because of sex, but did find cause to believe that it had engaged in discrimination based on national origin. Sanchez then brought an action in the district court against Standard for violation of Title VII. The defendant-company moved to dismiss the suit on the grounds that the allegations of discrimination on the basis of national origin had not properly been raised before the EEOC. The district

court agreed that the original allegation against Standard was insufficient to support the complaint and dismissed the action. It found the amended complaint could not properly be treated as a predicate for the suit.

On appeal, the Fifth Circuit reversed. In so doing, it gave as its opinion that the only essential element of a timely charge is the allegation of facts contained therein. It further concluded that the charging party's failure to attach the correct legal conclusion to the factual allegations contained in the original charge was a mere technicality and would not prevent amendment of the complaint so long as the original facts alleged supported the amended charge. If this were all before us today, I might not feel compelled to dissent, for if the facts alleged are sufficient to put the employer on notice as to the charges against him, then one may say the requirements of the EEOC's own regulations may be satisfied. Here, however, there was no amended complaint, and the facts set forth in the complaint filed by Slaughter, a black man alleging racial discrimination, can in no way be viewed as sufficient to have put GE on notice that the Commission would also be reviewing its hiring practices as to women based on sex, not race. In essence, Slaughter states that because he was black and allegedly a member of the Black Panthers, he was denied employment. These facts may not be viewed as supporting a charge against GE alleging sex discrimination. Thus, GE could not have been put on notice, have effectively offered evidence or have submitted any statement of its position as to such matters during the investigatory stages of the proceedings. Also, the arbitrary omission of the first stage of the settlement procedure serves to accentuate the fact that GE was kept completely in the dark concerning the allegations of sex discrimination until it was presented with the EEOC's previously determined conclusion as to reasonable cause.

The majority implies, however, that GE, having been afforded the ex post facto opportunity to enter into conciliation discus-sions after the EEOC's determination of "reasonable cause," could somehow have vindicated its rights despite the failure of the Commission to afford it a prior opportunity to be heard. Yet, EEOC's regulations at 29 CFR § 1601.19a provide for "settlement discussions" *after* the preliminary investigation but *before* any finding of "reasonable cause." Thus, there are two conciliatory stages provided for, one before the finding of cause and one following it. See 29 CFR § 1601.22. The first stage settlement proceedings, which provide the only meaningful opportunity to discuss allegations of discrimination, as distinguished from the remedy, were arbitrarily omitted by the EEOC. This, of course, circumvents the well-known axiom that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First National Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910). See also *St. Louis Mining Company v. Montana Mining Co.*, 171 U.S. 650, 656, 19 S.Ct. 61, 43 L.Ed. 320 (1898). And this principle has been repeatedly applied to the statute here under consideration. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969), describes the "securing of voluntary compliance with the law" as being "the Act's primary goal." 416 F.2d at 719. That rule was also applied in *Williams v. General Foods Corp.*, 492 F.2d 399, 405 (7th Cir. 1974), where the court affirmed dismissal of a charge against a union because the EEOC complaint had only been filed against the company. There, the court stated: "That rule [of *Bowe*] is equally applicable here, since even if the Unions were aware of Williams' charges, they were denied the opportunity to participate in conciliation proceedings aimed at voluntary compliance under EEOC auspices." In addition, the Sixth Circuit in *EEOC v. McMillan Bloedel Containers*, 503 F.2d 1086, 1092 (6th Cir. 1974), repeated and quoted with approval the statement in *Bowe* that the Act's primary goal is the securing of voluntary compliance with the law. The action of the EEOC in this case arbitrarily deprived the company of the first and only real settlement opportunity provided for by its own regulations. This, it seems to me, is in direct conflict

with the general policy of the law which favors settlements, and the specific primary goal of this Act, which is to secure voluntary compliance as contrasted with compliance secured after long, expensive, time-consuming, and enervating litigation, which might very well have been avoided if the EEOC had only chosen to give its own regulations a chance to work.

Moreover, I am of opinion that what is required by these regulations is more than a mere opportunity to comment, but "the reality of an opportunity to submit an effective presentation" as we said in a different context but with the same meaning in *Appalachian Power Co. v. EPA*, 477 F.2d 495, 503 (4th Cir. 1973). Here, GE was presented with an accomplished fact. It could not challenge the EEOC's determination in any subsequent conciliation proceeding but could only discuss what action to take toward eliminating the previously found "unlawful employment practice." This hardly constitutes "an opportunity to submit an effective presentation."

Nevertheless, the majority goes on to argue that in cases such as this where the EEOC uncovers facts which indicate discriminatory acts other than those alleged in the filed charge, it should not be obliged to "cast a blind eye" or "sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon." I especially note that GE does not even intimate overlooking or winking at any Title VII violation coming to the attention of the Commission, and, accordingly, I must conclude that the suggestion is only a straw man, promptly decimated with facility equal to that of its creation. The Commission, or any member thereof, is always free to file a complaint alleging the date, place and circumstances of any discriminatory act or acts which it believes have taken place. After so doing,

however, EEOC must afford the employer an opportunity to be heard prior to any finding of reasonable cause. The employer must be given the opportunity to show there is no cause of action, not merely to try to arrive at remedies after having been presented with previously found facts and legal conclusions of guilt.

As this court has repeatedly stated, "[a]n agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." *United States v. Heffner*, 420 F.2d at 811. The arbitrary character of such action is in no way ameliorated by the fact that it is the EEOC rather than the Internal Revenue Service or the Selective Service which has refused to follow its own regulations. Nor is it of any moment that the summary procedures followed by the Commission may have saved "valuable administrative resources" and prevented "intolerable delay in the enforcement of rights which require a 'timely and effective remedy'," for the arbitrary use of executive powers, however administratively efficient, may always be viewed as more convenient and effective and thus, upon rationalization, justifiable. The Commission is, of course, free to change its regulations should it determine that its enforcement procedures are, in fact, as cumbersome, when scrupulously applied, as the majority suggests. The fact that it has not adopted regulations more to our liking is no call to impose our notions upon the Commission as to how it may allocate its administrative resources or to approve shortcuts which deprive litigants of substantial administrative rights.

I am thus of opinion the conclusion reached by the majority is irreconcilable with the long line of cases requiring strict compliance with agency regulations in enforcement proceedings.[9] To GE here, the

---

9. See, e.g., *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) (Secretary of the Interior); *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1953) (Attorney General); *Brennan v. Gilles & Cötting, Inc.*, 504 F.2d 1255, 1260 (4th Cir. 1974) (Secretary of Labor); *United States v.* *Ewig Bros. Co., Inc.*, 502 F.2d 715, 725 (7th Cir. 1974) (Food and Drug Administration); *United States ex rel. Coates v. Laird*, 494 F.2d 709, 711 (4th Cir. 1974) (Secretary of Defense); *United States ex rel. Brooks v. Clifford*, 409 F.2d 700, 706 (4th Cir. 1970) (Secretary of Defense).

government is the EEOC. To the taxpayer, it is the Internal Revenue Service. To the draftee, it is the Selective Service Board. No basis exists to distinguish between them. If one agency must scrupulously obey its own regulations, others should be required to do the same. Additionally, I believe the opinion of the majority encourages litigation rather than settlement, and that the entire procedural aspect of this case as conducted by the EEOC has been essentially unfair due to the flagrant lack of notice, opportunity to be heard, and opportunity to settle. It follows that I would affirm the judgment of the district court for the reasons I have expressed here.